IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARGARET LEVINGS and JAMES LEVINGS, <br><br> Plaintiffs, <br><br> v. <br><br> DIMONT & ASSOCIATES, LLC and JP MORGAN CHASE BANK, NA, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. CIV-21-21-PRW

## **ORDER**

This case comes before the Court on Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss (Dkt. 8) and Defendant Dimont & Associates, LLC's Motion to Dismiss (Dkt. 10). For the reasons that follow, the Motions (Dkts. 8 & 10) are **GRANTED**, and this case is **DISMISSED** with prejudice.

### *Background*

The dispute in this case arises out of a single phone call placed in response to a single letter.[1] Plaintiffs Margaret and James Levings entered into a mortgage agreement with Defendant JPMorgan for a home in Pocola, Oklahoma. In 2020, as part of bankruptcy proceedings in the Eastern District of Oklahoma, Plaintiffs entered into a settlement

---

[1] At this stage, the Court accepts all well-pleaded allegations in Plaintiffs' Complaint as true and views those facts in the light most favorable to Plaintiffs. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

agreement with JPMorgan, in which Plaintiffs agreed to vacate the home and relinquish possession of the property to JPMorgan. About a month after Plaintiffs vacated the home, Defendant Dimont & Associates, LLC—a third party administrator who handles hazard insurance claims on foreclosed homes on behalf of JPMorgan—sent a one and a half page letter to the Pocola Police Department regarding the home.

The letter, which is the center of Plaintiffs' claims in this lawsuit, "notif[ied]" the Police Department "of a loss caused by Theft and/or Vandalism" at the home.[2] Specifically, the letter alleged the theft of a range and refrigerator—two objects that Plaintiffs allege the settlement agreement permitted them to take when they vacated the property. The letter explained that Dimont was "obligated under insurance policy provisions to notify [the Police Department] of this Theft and/or Vandalism," and requested that the Department "assign a case, incident report, or reference number regarding this notification."[3]

Although the letter makes no reference to Plaintiffs, Plaintiffs allege that both Defendants, acting in a "joint venture," "fabricated the crimes described in [the letter] and made a false report to law enforcement authorities anticipating that the Pocola Police Department would threaten the [Plaintiffs] with criminal prosecution and that [Defendants] would collect on a false and fraudulent insurance claim."[4] After the letter was sent, Pocola

---

[2] The full letter is found at JPMorgan's Mot. (Ex. 1, Dkt. 8), at 2–3.
[3] *Id.*
[4] Pl.'s Pet. (Ex. 2, Dkt. 2), at 9.

Police made a single phone call to Plaintiffs regarding the home.[5] Apparently, after the phone call, nothing else came of the letter.

The letter gives rise to all of Plaintiffs' six claims in this suit. Plaintiffs allege that the letter constituted a malicious abuse of process, libel per se, a violation of the Oklahoma Consumer Protection Act, and negligence by Defendants causing harm to Plaintiffs. Plaintiffs' Complaint also seeks a declaratory judgment for a "determination of their rights under Oklahoma law to be protected from the transmission of a fabricated report to the police of crimes that implicate them in criminal activity."[6]

In response, both Defendants filed separate motions to dismiss. Defendants argue that Plaintiffs' claims all fail as a matter of law because Dimont's letter notifying the police of potential crimes is privileged under Oklahoma law and absolutely immune from civil liability. Defendants also argue that, even accepting the allegations in the Complaint as true, there are several other reasons why Plaintiffs' Complaint fails to plead any plausible claims against Defendants upon which relief can be granted, and as such, Plaintiffs' claims should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[5] As noted above, the letter does not name Plaintiffs, and the Complaint does not explain why the Police called Plaintiffs regarding the incident or what was said on the call.

[6] Pl.'s Pet. (Ex. 2, Dkt. 2), at 15. This case was initially filed in Oklahoma state court, where a plaintiff's initial pleading is referred to as a "Petition." For the sake of simplicity and clarity, the Court will refer to Plaintiffs' Petition as the "Complaint."

## *Legal Standard*

"A cause of action may be dismissed under [Rule] 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim."[7] When reviewing a Rule 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[8] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[9] At this stage, a plaintiff bears the "obligation to provide the grounds of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[10] The pleaded facts must be sufficient to establish that the claim is plausible.[11] Ultimately, the Court may "dismiss a claim on the basis of a[ny] dispositive issue of law."[12]

---

[7] *Engebretson v. Mahoney*, 2010 WL 2683202, at *2 (D. Mont. 2010).

[8] *Alvarado*, 493 F.3d at 1215 (quoting *David*, 101 F.3d at 1352).

[9] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal citations & quotation marks omitted).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks & citations omitted) (alteration in original).

[11] *See id.* Generally, a complaint will survive a Rule 12(b)(6) motion if it "state[s] a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[12] *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

*Discussion*

The parties agree that each claim in this diversity action is governed by the substantive law of Oklahoma. As such, the Court must apply Oklahoma law as it is "declared by its Legislature in a statute or by its highest court"[13]—here, the Oklahoma Supreme Court. What the parties fail to discuss—but implicitly recognize—is that the Oklahoma Supreme Court has not definitively weighed in on some of the issues in this case.[14] In a diversity case, "[i]f the state's highest court has not addressed the issue presented,"[15] federal courts must engage in what is often referred to as the "Erie-guess."[16] That is, "the federal court must determine what decision the state [high] court would make if faced with the same facts and issue."[17]

In making the Erie-guess, the Court is "free, just as state judges are, to consider all the data the highest court of the state would use in an effort to determine how" that court would decide the issue.[18] At the very least, courts "should consider state court decisions,

---

[13] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[14] Neither party has asked the Court to certify any of these questions to the Oklahoma Supreme Court, a process that "is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988).

[15] *Id.*

[16] *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005).

[17] *Armijo*, 843 F.2d at 407; *see also Bextel v. Bryner*, 836 F. App'x 706, 709 (10th Cir 2020); *Konradi v. United States*, 919 F.2d 1207, 1213 (7th Cir. 1990).

[18] 20 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 61 (2d ed.) ("Wright & Miller"); *see Stuart v. Colorado Interstate Gas Co.,* 271 F.3d 1221, 1228 (10th Cir. 2001) (explaining that the Court is "free to consider all resources available")

decisions of other states, federal decisions, and the general weight and trend of authority."[19] Sources such as the Restatements of Law, treatises, and other commentary may be consulted, particularly where the state high court has relied on those exact sources before in a similar context.[20] In conducting this analysis, the Court must always be mindful that its "function is not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt."[21]

With these principles in mind, the Court proceeds to the merits of Defendants' motions to dismiss. The Court first addresses counts one, two, four, and five of Plaintiffs' Complaint, and then turns to counts three and six.

I. *Because Dimont's letter to the police is privileged, counts one, two, four, and five must be dismissed.*

Defendants first argue that counts one, two, four, and five of Plaintiffs' Complaint fail as a matter of law because Dimont's letter notifying the police of potential crimes is privileged under Oklahoma law and absolutely immune from civil liability.[22] As

---

[19] *Armijo*, 843 F.2d at 407; *see McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 662 (3d Cir. 1980). Decisions of other state courts are particularly relevant where the other state's "doctrinal approach is substantially the same." *Liddington v. Burns*, 916 F. Supp. 1127, 1131 (W.D. Okla. 1995).

[20] *Liddington*, 916 F. Supp. at 1131; *see also McKenna*, 622 F.2d at 662; Wright & Miller, *supra*, § 61.

[21] Wright & Miller, *supra*, § 61.

[22] Defendants argue that the privilege also applies to counts three and six. Because the Court determines that counts three and six can be decided on other grounds, the Court declines to reach the argument that those claims are also covered by the litigation privilege. It is well established that, if the privilege applies to Defendants' conduct, the privilege extends to the type of claims asserted in counts one, two, four, and five. *See Kirschstein v.*

Defendants' theory goes, if the report to the police is privileged, none of these counts state a claim upon which relief can be granted. Plaintiffs do not dispute that last point. And they agree that Oklahoma has recognized a privilege for certain litigation activities, like a witness's testimony at trial. Instead, Plaintiffs argue that Oklahoma's common law privilege does not and should not extend to reports to the police or—at the very least—false reports.

The Oklahoma Supreme Court has long recognized "an absolute privilege" (sometimes called an "immunity") for communications (1) made "during" various "judicial or other proceedings authorized by law" and (2) "made preliminary to a proposed [legal] proceeding."[23] When the privilege applies, it absolutely prohibits the speaker from being hauled into court and held liable for a variety of civil claims.[24] The court has applied the privilege to, among other things, witness testimony given at a trial or other "quasi-judicial" administrative proceeding, as well as affidavits and other statements submitted to such

---

*Haynes*, 788 P.2d 941, 945 (Okla. 1990) (holding that the privilege applies to defamation claims, as well as intentional infliction of emotional distress claims when based on the same factual allegations as the defamation claim); *Hartley v. Williamson*, 18 P.3d 355, 358 (Okla. Civ. App. 2000) (recognizing that the privilege recognized in *Kirschstein* also extends to claims for negligence, deceit, and conspiracy to commit abuse of process). The same cannot be said for the remaining claims. While there appear to be powerful arguments that the privilege should be extended to those claims, that would require the Court to conduct another Erie-guess.

[23] This privilege is part statutory and part "common law." *See Kirschstein*, 788 P.2d at 948.

[24] *See Kirschstein* 788 P.2d at 945 (defamation claims, as well as intentional infliction of emotional distress claims when based on the same factual allegations as the defamation claim); *Hartley*, 18 P.3d at 358 (negligence, deceit, and conspiracy to commit abuse of process).

proceedings.[25] The question in this case is whether Dimont's report to the police is a statement "made preliminary to a proposed [legal] proceeding"[26] or otherwise falls within the scope of the privilege.

The parties have not identified controlling state law on that precise issue. As far as the Court is aware, the Oklahoma Supreme Court has never decided whether the litigation privilege extends to allegedly false police reports or, for that matter, police reports generally. So, the Court must conduct the Erie-guess and determine whether the Oklahoma Supreme Court would extend privilege and absolute civil immunity to Dimont's letter to the police.

Although the Oklahoma Supreme Court has not yet weighed in on the issue, the weight of authority suggests that the Oklahoma Supreme Court would extend privilege and absolute civil immunity to reports of potential crimes made to the police and that the privilege would extend to counts one, two, four, and five of Plaintiffs' Complaint. As Defendants point out, another federal judge sitting in this state extended Oklahoma's litigation privilege to police reports.[27] And while the analysis in that case is brief and carries no precedential effect,[28] its conclusion is in line with broader principles of Oklahoma law.

---

[25] *See generally Kirschstein v. Haynes*, 788 P.2d 941 (Okla. 1990).

[26] *Id.* at 948.

[27] *Phuong Nguyen v. Globe Life*, 2019 WL 208900, at *6 (W.D. Okla. Jan. 15, 2019).

[28] Although decisions by other federal district court judges do not carry any precedential value, they are given some weight: "Such decisions should be accorded 'proper regard' of course, but not conclusive effect." *McKenna*, 622 F.2d at 662.

Start with what the Oklahoma Supreme Court has said. The court has "recognize[d] an absolute privilege for communications made preliminary to proposed judicial or quasi-judicial proceedings . . . generally under the standards set forth at the Restatement (Second) of Torts §§ 586, 587 and 588 and the comments thereto."[29] In other words, Oklahoma's "common law" in this area is "embodied in the Restatement."[30] That is significant here because the Restatement itself explicitly supports extending the litigation privilege to reports made to the police: "Formal or informal complaints to a prosecuting attorney *or other law enforcement officer concerning violations of the criminal law* are absolutely privileged" from civil liability "under the rule stated in § 587" of the Restatement.[31]

This interpretation of the Restatement's privilege is consistent with the broader weight of authority. Courts in several other states, applying the very same Restatement sections, have applied the absolute litigation privilege to reports made to the police.[32] The

---

[29] *Kirschstein*, 788 P.2d at 945.

[30] *Id.* at 948.

[31] Restatement (Second) of Torts § 598 cmt. e (Am. L. Inst. 1977) (emphasis added); *see Ledvina v. Cerasani*, 146 P.3d 70, 74 (Ariz. Ct. App. 2006) (discussing § 598 cmt. e). The comments to § 587 also support this point, explaining that "[t]he rule stated in this Section is applicable . . . . to information given and informal complaints made to a prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution whether or not the information is followed by a formal complaint or affidavit." Restatement (Second) of Torts § 587 cmt. b (Am. L. Inst. 1977); *see Sprauve v. CBI Acquisitions, LLC*, 2010 WL 3463308, at *11–12 (D.V.I. Sept. 2, 2010) (discussing § 587 cmt. b).

[32] *See, e.g.*, *Ledvina*, 146 P.3d at 72–76; *Illaraza v. HOVENSA LLC*, 73 F. Supp. 3d 588, 604–05 (D.V.I. 2014); *Sprauve*, 2010 WL 3463308, at *11–12; *Pawlowski v. Smorto*, 588 A.2d 36, 41–43 (Pa. Super. Ct. 1991); *Sacks v. Stinsky*, 2019 WL 2521635, at *3–4 (E.D. Pa. June 19, 2019); *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1108 (Ill. App. Ct. 1991); *Razavi v. Sch. of the Art Inst. of Chicago*, 122 N.E.3d 361 (Ill. App. Ct.

Court finds this trend to be a particularly significant indicator of what the Oklahoma Supreme Court would do if faced with this question because that court has often relied on the construction of the Restatement privilege by other courts to determine the scope of the privilege under Oklahoma law.[33]

Extending the privilege to Dimont's letter is also in line with the purposes of the privilege.[34] As the Oklahoma Court of Civil Appeals explained in an analogous context, "[t]he underlying public policy of this absolute privilege is to assure a citizen utmost freedom in reporting suspected wrongdoings."[35] Exposing members of the public to civil liability for reports of alleged crimes runs the risk of chilling legitimate reports.[36] "It seems obvious that in order for the [police] to be effective there must be an open channel of communication by which citizens can call [their] attention to suspected wrongdoing. That channel would quickly close if its use subjected the user to a risk of [civil] liability."[37]

---

2018). *Ledvina*'s exhaustive exploration of the relevant authorities—including Oklahoma caselaw—is particularly insightful. *See* 146 P.3d at 72–76.

[33] *See, e.g.*, *Kirschstein*, 788 P.2d at 948 n.9.

[34] *See Hughes v. Bizzell*, 117 P.2d 763, 765 (Okla. 1941); *Cf. Pawlowski*, 588 A.2d at 42 (applying the Restatement).

[35] *White v. Basnett*, 700 P.2d 666, 668 (Okla. Civ. App. 1985). As Plaintiffs point out, the privilege in *White* arises in a slightly different context. But its explanation of broader public policy interests is analogous to the report to the police here. It is difficult to think that Oklahoma's interest in knowing about potential criminal activity is any less compelling than its interest in knowing about potential wrongdoing by police officers.

[36] *See id.* ("Without the entitlement of an absolute privilege, citizens may be fearful of filing legitimate complaints."); *Ledvina*, 146 P.3d at 74 ("The mere possibility of retaliatory defamation claims would also tend to discourage free and unfettered reporting to law enforcement authorities to assist the detection and prosecution of criminal activity.")

[37] *King v. Borges*, 104 Cal. Rptr. 414, 418 (Cal. Ct. App. 1972) (applying the Restatement).

While it's true that extending the privilege to allegedly false reports imposes costs on some, "[t]he great underlying principle upon which the doctrine of privileged communications rests," the Oklahoma Supreme Court long ago explained, is that "the interests and the necessities of society [sometime] require that the . . . publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution for the sake of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare."[38]

None of Plaintiffs' arguments to the contrary are convincing. Plaintiffs' primary argument is that even if filing a police report is ordinarily privileged, including false and misleading statements in a report—as the Complaint alleges Dimont's letter did—abrogates any civil immunity for those statements. But Oklahoma's courts have long recognized that the common law civil litigation privilege "extends to communications regardless of whether they are true or false."[39] And other courts applying the Restatement's explication of the privilege have reached the same conclusion.[40]

---

[38] *Hughes*, 117 P.2d at 765.

[39] *Kirschstein*, 788 P.2d at 950; *see, e.g.*, *Pac. Emp. Ins. Co. v. Adams*, 168 P.2d 105, 107 (Okla. 1946); *Hughes*, 117 P.2d at 765.

[40] *See, e.g.*, *Illaraza*, 73 F. Supp. 3d at 605 ("A party cannot be subjected to [] liability for reporting to the police his belief that a crime has been committed, even if this belief is unfounded or later turns out to be erroneous."). Nor is it material "whether a formal criminal complaint or civil legal proceeding actually followed the [Defendants'] reports." *Razavi*, 122 N.E.3d at 375 (applying the Restatement); *see also* Restatement (Second) of Torts § 587 cmt. b (Am. L. Inst. 1977).

But wait, Plaintiffs argue: Oklahoma law makes filing a false police report a crime.[41] And it would make little sense, according to Plaintiffs, to extend civil immunity to statements that could be subject to criminal prosecution. The problem with this argument is that the Oklahoma Supreme Court has already recognized (1) that whether an allegedly false statement is immune from civil liability and whether the same statement is subject to "separate criminal penalties . . . are distinctly separate questions" and (2) that extending civil immunity to statements that could be subject to criminal prosecution is entirely consistent with Oklahoma law.[42] It is not this Court's role to second-guess that judgment—*Erie* foreclosed that *Swift v. Tyson*-like argument long ago.[43]

Because Dimont's letter to the police is immune from civil liability in the context of the claims asserted in counts one, two, four, and five, those counts fail to state a claim upon which relief can be granted and must be dismissed.

II.    *Plaintiffs' remaining claims must also be dismissed.*

Having concluded that counts one, two, four, and five of Plaintiffs' Complaint fail to state a claim upon which relief can be granted, the Court must next address Defendants' argument that the two remaining claims—counts three and six—should also be dismissed. The Court addresses each claim in turn.

---

[41] *See* Okla. Stat. tit. 21, § 589(A).

[42] *Kirschstein*, 788 P.2d at 950–51.

[43] Under *Erie*, a federal court is "not authorized to second-guess a substantive decision" of a state high court. *Perry v. Johnston*, 641 F.3d 953, 955 (8th Cir. 2011); *see Erie*, 304 U.S. at 71 (rejecting *Swift v. Tyson*'s, 41 U.S. 1 (1842), holding "that federal courts exercising jurisdiction on the ground of diversity of citizenship . . . are free to exercise an independent judgment as to what the common law of the state . . . should be").

### A. Count Three: Oklahoma Consumer Protection Act

Count three of Plaintiffs' Complaint alleges a violation of the Oklahoma Consumer Protection Act (OCPA).[44] As relevant here, that statute prohibits "deceptive trade practice[s]" committed "in the course of" a covered entity's "business."[45] Plaintiffs allege that Defendants' "false report of crimes . . . made to the Pocola Police Department" "constitute deceptive trade practices that occurred in connection with a consumer transaction" in violation of the OCPA.[46] But count three fails to state a claim under the OCPA for at least two reasons.

First, to sufficiently plead a deceptive trade practice claim under the OCPA, Plaintiffs were required to plead, among other things, "a misrepresentation, omission or other practice" by Defendants "that has deceived or could reasonably be expected to deceive or mislead" the Plaintiffs.[47] But count three fails to meet this requirement. Instead of alleging a misrepresentation that deceived or could reasonably be expected to deceive the Plaintiffs, the Complaint alleges a misrepresentation—the "false report of crimes"—that was "made to the Pocola Police Department."[48] While those allegations could likely support a claim that the Defendants made a misrepresentation that deceived or could have deceived the Pocola Police Department, the allegations fail to plead any act by Defendants

---

[44] *See* Pl.'s Pet. (Ex. 2, Dkt. 2), at 11–13.
[45] Okla. Stat. tit. 15, § 753(20); *see Patterson v. Beall,* 19 P.3d 839, 846 (Okla. 2000).
[46] Pl.'s Pet. (Ex. 2, Dkt. 2), at 12.
[47] Okla. Stat. tit. 15, § 752(13).
[48] Pl.'s Pet. (Ex. 2, Dkt. 2), at 12.

that deceived or could be expected to deceive the Plaintiffs. Therefore, the Complaint fails to state a claim under the OCPA.

Plaintiffs' OCPA claim also fails to state a claim for a second, independent reason. To fall within the scope of the OCPA, the alleged deceptive practice must occur in connection with a "consumer transaction."[49] As defined by the OCPA, a consumer transaction means "advertising, offering for sale or purchase, sale, purchase, or distribution of any services or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever located, for purposes that are personal, household, or business oriented."[50] But Dimont's filing of a police report—the key activity at issue in count three—was in no way a part of a consumer transaction.[51] It bears no resemblance to any of the activities falling within the OCPA's definition. Seemingly recognizing this point, Plaintiffs argue that the police report is connected to a past consumer transaction—the mortgage between Plaintiffs and JPMorgan. But even if that activity falls within the scope of the OCPA—a proposition that many judges in this state, relying on an albeit unpublished Oklahoma Court of Civil Appeals opinion, have rejected[52]—the

---

[49] § 752(13); *see Terry v. Nuvell Credit Corp.*, 2007 WL 2746919, at *4–5 (W.D. Okla. Sept. 20, 2007).

[50] § 752(2).

[51] *Cf. Terry*, 2007 WL 2746919, at *4–5.

[52] *See, e.g.*, *West v. Ditech Fin. LLC*, 2016 WL 3200296, at *3 (W.D. Okla. June 8, 2016); *Brakebill v. Bank of Am. Corp.*, 2015 WL 5311281, at *2–3 (E.D. Okla. Sept. 11, 2015); *White v. CitiMortgage*, 2012 WL 13024694, at *2 (W.D. Okla. June 15, 2012). Elsewhere, Plaintiffs seem to suggest that the 2020 settlement agreement with JPMorgan could constitute a consumer transaction under the OCPA. But Plaintiffs fail to explain how a settlement that occurred during a judicial proceeding could constitute a consumer

mortgage activities would be far too attenuated to Dimont's filing of the police report to fall within the scope of the OCPA.[53]

For both these reasons, count three fails to state a claim under the OCPA and must therefore be dismissed.

### B. Count Six: Declaratory Judgment

Count six of Plaintiffs' Complaint seeks a declaratory judgment pursuant to Okla. Stat. tit. 12, § 1651. But "state statutes governing declaratory relief are procedural, rather than substantive, in nature."[54] Because federal courts apply federal procedural law to cases removed to federal court,[55] "the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, rather than the Oklahoma Declaratory Judgment Act," now "governs Plaintiff[s'] claim for declaratory relief."[56]

The Federal Declaratory Judgment Act, however, provides only a remedy for existing causes of action; it does not create an independent cause of action itself.[57] Thus, "[t]he availability of declaratory relief 'presupposes the existence of a judicially remediable

---

transaction. Nor do they cite any authority for that proposition. It strains the limits of credulity to suggest that the settlement agreement falls within § 752(2)'s definition.

[53] *See, e.g.*, *Terry*, 2007 WL 2746919, at *4–5.

[54] *Carmichael v. Oklahoma Dep't of Corr.*, 2018 WL 1463366, at *5 (W.D. Okla. Mar. 23, 2018); *see also id.* ("The Oklahoma Declaratory Judgment Act 'merely provides another procedure whereby parties may obtain judicial relief.'" (quoting *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978)).

[55] *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

[56] *Carmichael*, 2018 WL 1463366, at *6.

[57] *Utah Hous. Corp. v. Country Pines, Ltd.*, 541 F. Supp. 3d 1288, 1296 n.1 (D. Utah 2021).

right.'"[58] But having concluded that Plaintiffs' five substantive claims fail as a matter of law, Plaintiffs' "request for declaratory relief in relation to those claims is not viable" and must also be dismissed.[59]

### *Conclusion*

Accordingly, the Defendants' motions to dismiss (Dkts. 8 & 10) are **GRANTED**, and this case is **DISMISSED** with prejudice.[60]

**IT IS SO ORDERED** this 29th day of November 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[58] *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)).

[59] *Id.* at 671.

[60] Defendants argue that Plaintiffs' claims should be dismissed with prejudice. In Defendants' view, allowing Plaintiffs to amend their Complaint would be futile because all six claims fail as a matter of law. The Court agrees. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *Choctaw Town Square, LLC v. City of Choctaw*, 2014 WL 12818169, at *5 (W.D. Okla. Dec. 29, 2014); *Crow v. Nira*, 2022 WL 4365976, at *2 n.2 (D. Colo. Sept. 21, 2022). Plaintiffs do not even attempt to dispute this point.